**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| TAWANDA R. CAUSAY, | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) |
| | ) |
| WELLS FARGO BANK, N.A. and EQUIFAX INFORMATION SERVICES, LLC, | ) |
| | ) **JURY DEMANDED** |
| Defendant. | ) |

**CLASS ACTION COMPLAINT**

**Introduction**

1. Plaintiff Tawanda R. Causay brings this action seeking redress for damages arising from Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") repetitive, persistent, and harassing collection/enforcement attempts in direct contravention of its express promise to "forebear taking any action whatsoever to collect against Grantor" in a deed of trust made in lieu of foreclosure. Plaintiff particularly seeks damages for failing to correct false information it furnished to credit reporting agencies, committed in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), defamation, and breach of contract.

2. Additionally, Plaintiff brings this action against Defendant Equifax Information Services, LLC for its failure to reasonably investigate Plaintiff's dispute in violation of the FCRA including reporting publicly available information inaccurately.

3. The FCRA requires credit reporting agencies to conduct proper reinvestigations of disputed information. See 15 U.S.C. § 1681i(a). However, Equifax failed to comply with these requirements with regard to Plaintiff's account.

4. Plaintiff also brings, on behalf of herself and all other similarly situated, a claim against Wells Fargo for negligently, knowingly, and/or willfully placing phone calls to Plaintiff's cellular telephone without her prior express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. 227 *et seq.* ("TCPA") which were part of its unfair practices.

5. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy.")

6. Accordingly, Plaintiff seeks actual damages, statutory damages, punitive damages, costs, and attorney fees.

**PARTIES**

7. Plaintiff is a citizen of the State of Illinois and a resident of Cook County, Illinois.

8. Plaintiff is a "consumer" and a "person" as those terms are used in and defined by the FCRA in that Plaintiff is an individual. 15 U.S.C. § 1681a(b), (c).

9. Plaintiff is a "person," as that term is used in the TCPA and defined by 47 U.S.C. § 153(39).

10. Defendant Wells Fargo was the mortgagee and servicer of the property located at 4529 S. Drexel Blvd Unit 3E, Chicago, IL 60653 (the "Property").

11. Upon information and belief, Wells Fargo is a citizen of South Dakota where its main office is located and engages in banking and mortgage lending services throughout this district and has subjected itself to the laws of the State of Illinois.

12. Defendant Wells Fargo is a "furnisher" as that term is used by the FCRA. *See, e.g.,* 15 U.S.C. § 1681i(a)(2) ("any person who provided any item of information").

13. Defendant Equifax is a foreign corporation doing business in this district.

14. Defendant Equifax is a consumer reporting agency as that term is defined by the FCRA. 15 U.S.C. § 1681a(f).

15. Defendant Equifax is regularly engaged in the business of assembling, evaluating, and disbursing of information concerning consumer for the purpose of furnishing "consumer reports" as that term is defined in § 1681a(d).

## JURISDICTION AND VENUE

16. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681p and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g)(2).

17. In the alternative, diversity jurisdiction exists pursuant to 28 U.S.C. 1332(a) because Plaintiff and Defendant are citizens of different states and the individual matter in controversy between them exceeds $75,000, exclusive of interest and costs.

18. Supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367(a).

19. Venue is proper in this district pursuant to 28 U. S. C. § 1391(b), as the property that is the subject of this action is situated in this judicial district.

## FACTUAL ALLEGATIONS

### The Contract between Defendant and Plaintiff

20. On April 12, 2007, Plaintiff executed a mortgage for her condominium located at 4529 S. Drexel Blvd., Chicago, IL 60653.

21. On September 10, 2010, the mortgage for the Property was assigned to Defendant Wells Fargo according to an Assignment of Mortgage filed with the Cook County Recorder of Deeds.

22. On November 16, 2012, Plaintiff and Wells Fargo entered into an agreement entitled Deed in Lieu of Foreclosure. A copy of the "Deed in Lieu" is attached as <u>Exhibit 1</u>.

23. The Deed in Lieu consists of a set of promises, including Plaintiff's promise to sell and grant her interest of the property to Wells Fargo.

24. In exchange, Wells Fargo "convenant[ed] and agree[ed] that it shall forever forebear taking **any action whatsoever** to collect against Grantor on the obligations which are secured by the mortgage/deed of trust." <u>Id</u>. (emphasis added).

25. "The true and actual consideration for this transfer consist[ed] of [Wells Fargo's] waiver of its right to bring an action against [Plaintiff] based on the promissory note secured by the mortgage…and agreement not to name [Plaintiff] as a party to a foreclosure." <u>Id</u>.

26. Additional consideration for this contract included $121,181.40. <u>Id</u>.

### Wells Fargo's Continued Collection and Furnishing After Execution of the Deed in Lieu

27. Upon information and belief, Wells Fargo sold the Property to a third party on or around June 4, 2013.

28. Upon information and belief, the Property has subsequently been listed for sale.

29. After executing the Deed in Lieu, Wells Fargo furnished information to the credit reporting agencies which it knew or had reasonable cause to believe was inaccurate as it continued to report the status of the loan as being in default. Wells Fargo breached its duty to provide accurate information under 15 U.S.C. § 1681s-2(a)(1)(A).

30. Over the three year period after execution of the Deed in Lieu, Wells Fargo sent form collection letters and placed telephone calls to Plaintiff on her cellular telephone. These letters and calls attempted to collect fees taken from her escrow account, falsely stated and attempted to collect the balance of the mortgage account, falsely stated and attempted to collect additional interest and fees, and unlawfully threatened foreclosure on the mortgage.

31. The telephone calls that Wells Fargo placed to Plaintiff's cellular telephone were placed using an automatic telephone dialing system and/or an automated or prerecorded voice. Often times when Plaintiff answered the phone, the line would be silent for a short period of time before a sound would be made. At other times, Wells Fargo would leave a voicemail that consisted of an automated or prerecorded voice.

32. On or around December 20, 2013, Wells Fargo sent a letter to Plaintiff stating that it "paid [her] property taxes on [her] behalf using [her] escrow account." This letter was false as Plaintiff did not have any property taxes due on the property she did not own.

33. On or around December 28, 2013, Wells Fargo sent a letter to Plaintiff stating it would pay a fee for supplicate tax bills from her escrow account.

34. Over this time period, and subsequent to this time period, Plaintiff called Wells Fargo multiple times and spoke with several different representatives. During these phone calls Plaintiff informed Wells Fargo that the Deed in Lieu had been executed and the threats being made and the fees being imposed were false.

### Wells Fargo's Continued Collection and Furnishing
### After Credit Reporting Agency Dispute

35. In April 2014, Plaintiff disputed the Wells Fargo inaccuracy with Equifax indicating that despite Wells Fargo's reporting she was no longer liable for the account.

5

36. Upon information and belief, Equifax promptly investigated the matter with the source that provided the information, Wells Fargo, thereby informing Wells Fargo of her dispute.

37. On or around June 25, 2014, Wells Fargo sent a form letter to Plaintiff confirming that it had knowledge that the Deed in Lieu was completed on November 23, 2012.

38. Nonetheless, Wells Fargo continued to send collection letters and statements regarding the nonexistent obligation, threatening foreclosure of a property that Plaintiff no longer owned.

39. In addition to receiving these threatening letters, Wells Fargo continued to report the account to the credit reporting agencies as being in default.

40. Wells Fargo continued to place phone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or an automatic or prerecorded voice.

### Equifax's Failure to Conduct a Reasonable Investigation
### After Plaintiff's Dispute

41. After receiving Plaintiff's dispute in April 2014, Equifax failed to conduct a reasonable investigation of that dispute.

42. After receiving the dispute, Equifax continued to report Plaintiff as being liable for the home mortgage account with Wells Fargo.

43. Although the information communicated between Wells Fargo and Equifax is in the possession of those entities and unavailable to Plaintiff, in the alternative and upon information and belief, Wells Fargo responded to Equifax and confirmed that its records reflected that the Deed in Lieu was completed on November 23, 2012 at the time of Plaintiff's dispute.[1]

---

[1] This allegation is pled in the alternative as Plaintiff is not privy to information that would conclusively demonstrate whether Wells Fargo failed to check reasonably available public records and a) Wells Fargo falsely responded to Equifax's request for information or b) Wells Fargo accurately responded to Equifax's request for information and Equifax refused to accurately report that information in Plaintiff's credit report. Plaintiff expects discovery to reveal which is true.

6

44. The information Equifax reported was false and in contradiction of both Wells Fargo's knowledge and publically available records.

### Wells Fargo's Continued Collection and Furnishing After It Confirmed Plaintiff Requested Wells Fargo Cease Communication

45. On or around November 23, 2014, Plaintiff called Wells Fargo, informing Wells Fargo that she no longer owns the loan and requesting that Wells Fargo cease all communication, including placing calls to her cellular telephone and mailing letters.

46. On or around November 23, 2014, Wells Fargo sent a letter confirming that Plaintiff asked Wells Fargo to discontinue all future contact by telephone and mail. A redacted copy of this form letter is attached as Exhibit 2.

47. On or around December 5, 2014, Wells Fargo sent a letter acknowledging that on November 23, 2014 Plaintiff advised a Wells Fargo team member that she no longer owns the property securing the mortgage account and requesting that Wells Fargo discontinue all correspondence regarding the mortgage account. In the very same letter, Wells Fargo stated that this account was due for October 1, 2009 through December 1, 2014 mortgage payments. The letter states:

> **"We are currently in the process in moving forward with the foreclosure referral and process as allowed by Illinois state law."**

48. In addition to receiving these threatening letters, Wells Fargo continued[2] to falsely report the account to the credit reporting agencies as being in default.

49. On February 3, 2015, Plaintiff's credit report still displayed the non-existent Wells Fargo loan as being in default.

---

[2] Plaintiff is not privy to information that would conclusively demonstrate whether Wells Fargo failed to check reasonably available public records and a) Wells Fargo falsely responded to Equifax's request for information or b) Wells Fargo accurately responded to Equifax's request for information and Equifax refused to accurately report that information in Plaintiff's credit report. Plaintiff expects discovery to reveal which is true, but nonetheless Wells Fargo subsequently continued to falsely report the account to the credit reporting agencies.

7

50. Plaintiff again contacted Wells Fargo to inform it of the false consumer report and inaccuracies in Wells Fargo's system.

51. Wells Fargo continued to place phone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or an automatic or prerecorded voice.

### Calls Made to Plaintiff's Cell Phone after Revoking Consent

52. The Deed in Lieu effectively terminated any business relationship between Plaintiff and Wells Fargo.

53. Yet, Wells Fargo continued to place unauthorized collection calls to her cellular phone. These calls were made using an automatic telephone dialing system and/or an automatic or prerecorded voice.

54. Moreover, on or before November 23, 2014, Plaintiff orally revoked any consent to receive phone calls from Wells Fargo on her cellular telephone.

55. On or before November 23, 2014, Wells Fargo sent a form letter (Exhibit 3) to Plaintiff confirming that she orally revoked consent and requested that Wells Fargo Home Mortgage discontinue all future contact by telephone and mail.

56. Yet, Wells Fargo continued to place unauthorized collection calls to her cellular phone. These calls were made using an automatic telephone dialing system and/or an automatic or prerecorded voice.

57. Wells Fargo's phone calls harmed Plaintiff by causing the very harm that Congress sought to prevent – a "nuisance and invasion of privacy."

58. Wells Fargo's phone calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

59. Wells Fargo's phone calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

60. Wells Fargo's phone calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

61. Additionally, Wells Fargo's phone calls harmed Plaintiff by causing Plaintiff aggravation and annoyance, wasting Plaintiff's time, and depleting the battery life on her cellular telephone.

## COUNT I AGAINST DEFENDANT WELLS FARGO: DEFAMATION

62. Plaintiff realleges and incorporates paragraphs 1 through 61 above as if fully set out herein.

63. Wells Fargo published the misrepresentation to TransUnion, Equifax, and Experian and through these entities to all of Plaintiff's potential lenders on multiple occasions, including but not limited to: Credit One Bank, N.A. published on or around March 26, 2014; CBNA published on or around April 28, 2014; Central Houston Nissan published on or around May 24, 2014; SYNCB/TJX CO Dual Card, on or around August 30, 2014; Enhanced Recovery on or around December 6, 2014 and December 18, 2014; Avante USA on or around January 5, 2015; Fatact Free Disclosure on or around May 2, 2014; Velocity Portfolio Group, on or around April 22, 2015 ("the Defamations").

64. The Defamations were made with legal malice and a willful intent to injure the Plaintiff by placing derogatory credit information on her credit reports as punishment for what defendant believed was a failure to pay it.

65. After **December 2012**, Wells Fargo did not have any reasonable basis to believe that the Plaintiff was responsible for the account reported in the representations. It also had substantial evidence by which to have concluded that Plaintiff was not responsible for any

9

payments on the property. In fact, Wells Fargo admitted as much to Plaintiff on various phone calls and letters. Further, Wells Fargo has willfully adopted procedures which wholly ignore the demands of consumers to remove inaccurate credit information from their credit files.

66. Between February 2013 and March 2014, Plaintiff had multiple conversations with various Wells Fargo employees or representatives in which Plaintiff informed Wells Fargo of the inaccuracies in the letters she received and requested that Wells Fargo cease its practice of continuing to collect on a mortgage no longer existed.

67. After **February 2013**, Wells Fargo did not have any reasonable basis to believe that the Plaintiff was responsible for the account reported in the representations. In fact, Wells Fargo admitted as much to Plaintiff on various phone calls. It also had substantial evidence by which to have concluded that Plaintiff was not responsible for any payments on the property.

68. In April 2014, Plaintiff disputed the Wells Fargo inaccuracy with the credit reporting agency. After **April 2014**, Wells Fargo did not have any reasonable basis to believe that the Plaintiff was responsible for the account reported in the representations. It also had substantial evidence by which to have concluded that Plaintiff was not responsible for any payments on the property. Further, Wells Fargo willfully adopted procedures which wholly ignore the demands of consumers to remove inaccurate credit information from their credit files.

69. The Credit Defamations and the conduct and actions of Wells Fargo were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against it, as furnisher, in an amount to be determined by the Court.

70. As a result of this conduct, action and inaction by Wells Fargo, the Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and

emotional pain and anguish and the humiliation and embarrassment of credit denials, in addition to the time, energy and effort Plaintiff has dedicated to attempting to correct her credit reports and Wells Fargo's internal records.

71. The conduct, actions and inactions of Wells Fargo were willful, malicious, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against Wells Fargo in an amount to be determine by the Court.

WHEREFORE, Plaintiff seeks judgment in favor of herself and against Defendant Wells Fargo Bank, N.A., for the following:

    a. Actual damages to be proven at trial;

    b. Reasonable attorneys' fees and costs;

    c. Such other and further relief as this Court shall deem just and proper.

## COUNT II AGAINST DEFENDANT WELLS FARGO: FAIR CREDIT REPORTING ACT

72. Plaintiff realleges and incorporates paragraphs 1 through 61 above as if fully set out herein.

73. Wells Fargo violated the Fair Credit Reporting Act, in particular 15 U.S.C. §1681s-2(b), in the following ways:

    a) by re-publishing the Wells Fargo misrepresentations within Plaintiff's credit file with Equifax without also including a notation that this debt was disputed;

    b) by failing to fully and properly investigate the Plaintiff's dispute of the Wells Fargo representation;

    c) by failing to review all relevant information regarding same;

      d)      by failing to correctly report results of an accurate investigation to each other credit reporting agency; and

      e)      by failing to permanently and lawfully correct its own procedures and internal records to prevent the re-reporting of the Wells Fargo Representations to the consumer reporting agencies.

74.      As a result of this conduct, action and inaction of Wells Fargo, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials in addition to the time, energy and effort Plaintiff has dedicated to attempting to correct her credit reports and Wells Fargo's internal records.

75.      Wells Fargo's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined pursuant to 15 U.S.C. §1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. 1681o.

76.      The Plaintiff is entitled to recover costs and attorney's fees from Wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff seeks judgment in favor of herself and against Defendant Wells Fargo Bank, N.A., for the following:

      a.    Entering judgment that Wells Fargo violated 15 U.S.C. §1681s-2(b);

      b.    Statutory damages as allowed under 15 U.S.C. §1681n;

      c.    Actual damages as allowed under 15 U.S.C. §1681n and/or § 1681o, and to be proven at trial;

      d.    Reasonable attorneys' fees and costs;

  e. Such other and further relief as this Court shall deem just and proper.

## COUNT III AGAINST DEFENDANT EQUIFAX:
## FAIR CREDIT REPORTING ACT

77. Plaintiff realleges and incorporates paragraphs 1 through 61 above as if fully set out herein.

78. 15 U.S.C. § 1681i states, in relevant part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly…of such dispute, the agency shall, free of charge, conduct a reasonable investigation to determine whether the dispute information in inaccurate and record the current status of the dispute information, or delete the item from the file…

79. Equifax violated § 1681i of the FCRA by failing to conduct a proper reinvestigation upon receiving Plaintiff's dispute.

80. As a result of this conduct, action and inaction of Equifax, the Plaintiff suffered damage by loss of credit, express denial of credit in reliance upon Equifax's consumer report, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials in addition to the time, energy and effort Plaintiff has dedicated to attempting to correct her credit reports.

81. Equifax's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined pursuant to 15 U.S.C. §1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. 1681o.

WHEREFORE, Plaintiff seeks judgment in favor of herself and against Defendant Equifax Information Services, LLC, for the following:

  a. Entering judgment that Equifax violated 15 U.S.C. §1681i;

    b. Statutory damages as allowed under 15 U.S.C. §1681n;

    c. Punitive damages as this Court may allow under 15 U.S.C. §1681n to be proven at trial;

    d. Actual damages as allowed under 15 U.S.C. §1681n and/or § 1681o, and to be proven at trial;

    e. Reasonable attorneys' fees and costs;

    f. Such other and further relief as this Court shall deem just and proper.

## COUNT VI AGAINST DEFENDANT WELLS FARGO: BREACH OF CONTRACT

82. Plaintiff realleges and incorporates paragraphs 1 through 61 above as if fully set out herein.

83. Plaintiff fully performed her obligations under the agreement by selling and granting her interest in the property to Wells Fargo. According to the Estoppel Affidavit, the deed "was intended as an absolutely conveyance of title to said premises to Wells Fargo." The Estoppel Affidavit is attached to Exhibit 1 as Exhibit A.

84. Despite its promise under the Deed in Lieu, Wells Fargo frequently sent letters and phone calls to Plaintiff in an attempt to collect payments on the property.

85. These letters continued to threaten foreclosure on the nonexistent mortgage.

86. As a result of its continued efforts to collect on a nonexistent mortgage, Wells Fargo continued to report to the credit reporting agencies that an account was delinquent and failed to note that it was in dispute or resolved through a deed in lieu.

WHEREFORE, Plaintiff seeks judgment in favor of herself and against Defendant Wells Fargo Bank, N.A., for the following:

    a. Actual damages to be proven at trial;

    b. Reasonable attorneys' fees and costs;

    c. Such other and further relief as this Court shall deem just and proper.

### COUNT V AGAINST DEFENDANT WELLS FARGO: TELEPHONE CONSUMER PROTECTION ACT

87. Plaintiff realleges and incorporates paragraphs 1 through 61 above as if fully set out herein.

88. As is relevant here, the TCPA prohibits Defendant from making telephone calls "using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1)(A)(iii).

89. "Automatic telephone dialing system" refers to any "equipment which has the capacity … (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

90. Defendant caused equipment having the capacity to dial numbers without human intervention to be used to make telephone calls to the cellular telephone of Plaintiff.

91. Defendant has, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA.

### Class Allegations

92. Plaintiff brings this TCPA claim on behalf of herself and all other person similarly situated, as members of the proposed Plaintiff's Class (the "Class") and, under Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

93. Plaintiff proposed the following class definition, subject to amendment as appropriate:

**The TCPA Class**:

All persons within the United States who, within the last four years prior to filing of this Complaint (the "TCPA Period"), Defendant called on their cellular telephone through the use of an automated telephone dialing system, after a time

when a) Defendant's records show that the Class member orally revoked any consent; or b) Defendant's sent a letter, similar to Exhibit 2, confirming that the Class member asked that Wells Fargo discontinue contact to the Class member.

94. Upon information and belief, as part of Wells Fargo's policy and practice it regularly uses an automatic telephone dialing system to place class to Plaintiff and class members' cellular phone.

95. Wells Fargo placed these calls to cellular phones without the called party's prior express permission or consent.

96. This action is brought and may properly be maintained as a class action pursuant to the Federal Rules of Civil Procedure 23. This action satisfies the numerosity, predominance, adequacy, and/or superiority requirements of those provisions. Plaintiff does not know the exact size of the class as such information is in Defendant's possession due to the nature of the trade and business involved.

97. Common questions of law and fact exist as to all members of the class and predominate over any questions affecting individual members of the class, including Plaintiff, but not limited:

    a. Whether Wells Fargo used an automatic telephone dialing system within the meaning of the TCPA;

    b. Whether Wells Fargo had prior express permission or consent under the TCPA when it placed calls to Plaintiff's and class members' cellular telephones;

    c. Whether such practices violated the TCPA.

98. On information and belief, Plaintiff believes that there are more than 40 members in the class, and the class members are so numerous that joinder is impracticable.

99. Class action treatment is superior to other alternative actions for the fair and efficient adjudication of the dispute, and no difficulties are anticipated in the management of this action because the identities of class members are readily ascertainable from Defendant's records.

WHEREFORE, Plaintiff seeks judgment in favor of herself and all others similarly situated, for the following:

a. An order certifying the TCPA class, appointing Plaintiff as Class Representative, and appointing the undersigned as Class counsel;

b. Entering judgment that Wells Fargo violated 47 U.S.C. §227(b)(1)(A)(iii);

c. Statutory damages as determined at trial.

### JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

Dated: July 20, 2016                                        Respectfully submitted,

                                                            By: /s/ Lance A. Raphael
                                                            One of Plaintiff's Attorneys

Lance A. Raphael
Justin C. Hagan
Katherine M. Bowen
Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL  60602
(312) 782-5808