IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| TAWANDA R. CAUSAY, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WELLS FARGO BANK, N.A. and EQUIFAX ) <br> INFORMATION SERVICES, LLC, ) <br> ) <br>     Defendant. ) | No.   16-cv-07398 <br><br> Hon. John Robert Blakey |

### PLAINTIFF'S RESPONSE TO DEFENDANT WELLS FARGO'S PARTIAL COMBINED MOTION TO DISMISS AND MOTION TO STRIKE

After succumbing to relentless pressure from the bank,[1] Renee Causay gave up her home. All she wanted was for Wells Fargo to stop hounding her about her mortgage and end its barrage of collection letters and phone calls. In exchange for giving up her home, the bank agreed to "forever forebear taking any action whatsoever to collect against" her. ECF No. 1-1, Exhibit 1 to Plaintiff's Complaint, at ¶24. The bank did not uphold its end of the agreement. Instead, it continued its collection efforts against Ms. Causay for years.

Plaintiff Tawanda (Renee) Causay ("Plaintiff") opposes Defendant Wells Fargo Bank, N.A.'s ("Defendant" or "the bank")'s Rule 12(b)(6) Partial Motion to Dismiss and Rule 12(f) Motion to Strike. However, Plaintiff voluntarily withdraws her defamation claim (Count I) as this claim is subsumed under her breach of contract claim. Thus, this brief is directed at opposition to Defendant's Motion to Strike portions of her breach of contract claim (Count IV). Defendant's motion to strike allegations relevant to Plaintiff's breach of contract claim should be

---

[1] Defendant's high-pressure tactics have received recent notoriety. Glazer, Emily, Wall St. J., *How Wells Fargo's High-Pressure Sales Culture Spiraled Out of Control* (Sept. 16, 2016), http://www.wsj.com/articles/how-wells-fargos-high-pressure-sales-culture-spiraled-out-of-control-1474053044.

denied because, as set forth in detail below, Count VI arises from breach of an express contractual provision and is therefore not preempted.

## I. STATEMENT OF FACTS

In 2007, Plaintiff executed a mortgage for her condominium that was later assigned to Wells Fargo. Compl. ¶¶20-21. In 2008, for her loan with Wells Fargo, Ms. Causay was forced to confront the same economic crisis millions of homeowners across the country were forced to contend with. [2] As a result of Wells Fargo's efforts during the economic crisis, Ms. Causay relented to Wells Fargo and on November 16, 2012, Ms. Causay and Wells Fargo entered into the Deed in Lieu of Foreclosure ("Deed in Lieu"). Id., at ¶22. A copy of the Deed in Lieu is attached to Ms. Causay's Complaint as Exhibit 1. ECF No. 1-1-, Exhibit 1. In this agreement, Ms. Causay promised to sell and grant her interest in the property to Wells Fargo. Id., at ¶23; Ex. 1. In exchange for Ms. Causay's promise, Wells Fargo covenanted and agreed that it would "forever forebear taking any action whatsoever to collect against" her. Id., at ¶24, Ex. 1.

---

[2] Under FRE Rule 201(b) the Court can take judicial notice of the 2008 foreclosure crisis as well as Wells Fargo's role as a lender through that time, as reflected from publically available internet sources, both governmental and otherwise. *See* FRE Rule 201(b); *see also* Notes on Advisory Committee on Proposed Rules for FRE Rule 201(b), Pub. L. 93–595, §1, Jan. 2, 1975, 88 Stat. 1930; Apr. 26, 2011, eff. Dec. 1, 2011 ("As Professor Davis points out, A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69, 73 (1964), every case involves the use of hundreds or thousands of non-evidence facts. When a witness in an automobile accident case says "car," everyone, judge and jury included, furnishes, from non-evidence sources within himself, the supplementing information that the "car" is an automobile, not a railroad car, that it is self-propelled, probably by an internal combustion engine, that it may be assumed to have four wheels with pneumatic rubber tires, and so on. The judicial process cannot construct every case from scratch, like Descartes creating a world based on the postulate *Cogito, ergo sum*. These items could not possibly be introduced into evidence, and no one suggests that they be. Nor are they appropriate subjects for any formalized treatment of judicial notice of facts."); *Starr Int'l Co. v. FRB*, 906 F. Supp. 2d 202, 205 n.1 (S.D.N.Y. 2012) ("The Court also takes notice of the events constituting the financial crisis that occurred in fall 2008, for the purpose of providing historical context."); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 421 n.6 (S.D.N.Y. 2003) ("The Court may take judicial notice of the existence of the internet bubble and its subsequent crash.")

Despite a set of promises from Wells Fargo that it would forever forebear on collecting from Ms. Causay, Wells Fargo continued to try to collect from her. Id., at ¶29. Further, its collection efforts took the form of calling her, sending her collection agencies and making reports on the debt (incorrectly or otherwise) to credit reporting agencies. Id., at ¶29. Over the next three years, Wells Fargo made these attempts to collect on the loan in flagrant disregard of its prior agreement with Ms. Causay. Id., at ¶30. These efforts included sending letters that falsely stated and attempted to collect a balance on the mortgage account, falsely stated and attempted to collect additional interest and fees, and threatened to unlawfully foreclose on the mortgage. Id., at ¶30. Ms. Causay called Wells Fargo multiple times, speaking to several different representatives, in an attempt to cease these collection actions. Id., at ¶34. Ms. Causay informed these Wells Fargo representatives that the Deed in Lieu had been executed and that the threats being made and fees being imposed were false. Id., at ¶34.

Wells Fargo also broke its promise not to try to collect from Ms. Causay by taking an action to submit information about the debt (something it was not required to do) to TransUnion, Equifax, and Experian. Id., at ¶62.[3] Further aggravating was the fact that Wells Fargo's collection actions (*i.e.*, its submissions to the credit reporting agencies) contained false information (*i.e.*, saying a debt existed when it did not). Id., at ¶62.

---

[3] Reporting an alleged obligation to credit reporting agencies is collecting. *See Purnell v. Arrow Fin. Servs., LLC*, No. 07-1903, 2008 U.S. App. LEXIS 25488, *17 n.5 (6th Cir. Dec. 16, 2008) (unpubl.) (assuming reporting a debt to a credit reporting agency constitutes a "collection activity"), *citing* FTC Staff Opinion Letter, 1997 WL 33791232, *1 (F.T.C.) (Dec. 23, 1997) ("the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls."); *Smith v Encore Capital Group, Inc.*, 966 F Supp 2d 817, (E.D. Wis. 2013) (credit reporting constitutes collection of debt); *Edeh v. Midland Credit Mgmt.*, 748 F.Supp.2d 1030 (D. Minn. 2010); *Zamos v Asset Acceptance, LLC*, 423 F.Supp.2d 777 (N.D. Ohio 2006); *Sullivan v. Equifax, Inc.*, 2002 U.S. Dist. LEXIS 7884, at *4 (E.D. Pa. Apr. 19, 2002) ("reporting a debt to a credit reporting agency is a powerful tool designed, in part, to wrench compliance with payment terms").

Thus, while the act of submitting information on the alleged debt in and of itself (regardless as to whether the debt information was accurate or otherwise) breached the parties' agreement to forebear on taking any action to collect the debt, separately, the inaccuracy of the information the bank submitted required Ms. Causay to dispute the inaccuracy with Equifax.[4] Id., at ¶35. Upon information and belief, Equifax informed Wells Fargo of Ms. Causay's dispute. Id., at ¶36. Beyond Wells Fargo's execution of the Deed in Lieu and Ms. Causay's many phone calls bringing its existence to Wells Fargo's attention, Wells Fargo sent a letter to Ms. Causay confirming that it had knowledge of the Deed in Lieu. Id., at ¶37.

Despite expressly confirming knowledge of the Deed in Lieu and Ms. Causay's dispute through Equifax, Wells Fargo continued its efforts to collect on the nonexistent loan. Id., at ¶38-40. Wells Fargo persisted in sending collection letters and statements which threatened foreclosure of a property that Ms. Causay no longer owned. Wells Fargo continued to place phone calls to Ms. Causay's cellular telephone. Id., at ¶38. Finally, and most relevant to the present motion, Wells Fargo continued to report the account to credit reporting agencies as being in default. Id., at ¶39.

On July 20, 2016, Ms. Causay filed her Class Action Complaint. ECF No. 1. On September 12, 2016, Ms. Causay filed an Initial Status Report (ECF No. 9) pursuant to this Court's Order. ECF No. 6. On September 19, 2016, Wells Fargo moved for partial dismissal of Ms. Causay's defamation claim and to strike certain allegations in support of her breach of contract claim. ECF No. 20-21. The motion is silent as to Ms. Causay's claim under the Fair Credit Reporting Act (FCRA) and the class action claim arising under the Telephone Consumer Protection Act (TCPA). ECF No. 21, p.3.

---

[4] Plaintiff also disputed the account as listed by other credit agencies, but their full and proper investigation resolved the matter.

## II. LEGAL STANDARD

While Federal Rule of Civil Procedure 12(f) allows a district court to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter," such motions are generally disfavored. *Custom Vehicle, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006); *see Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819 (6th Cir. 1962) (partly because of the practical difficulty of deciding cases without a factual record, it is well established that the action of striking a pleading should be used sparingly by courts). As such, a motion to strike "will not be granted unless it appears to a certainty that the movant would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991).

The Seventh Circuit permits such striking if the matter bears no possible relation to the controversy. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). "The party moving to strike has the burden of showing that the challenge allegations are so unrelated to Ms. Causay's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F.Supp.2d 979, 982 (N.D. Ill. 2003). Defendant has failed to meet its burden with this dilatory motion to strike relevant factual allegations related to Wells Fargo's actions in breach of its agreement with Ms. Causay.

## III. DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED

Defendant's motion to strike Count IV should be denied because (1) the duty imposed upon Wells Fargo arises from an express contractual provision in the Deed in Lieu and is therefore not preempted by the FCRA (or any statutory scheme), and; (2) the allegations

5

pertaining to Wells Fargo's breach of the Deed in Lieu do not meet the criteria for being stricken pursuant to Rule 12(f).

### A. Ms. Causay's Breach of Contract Allegations Support a Cause of Action Because the FCRA Does Not Preempt Express Breach of Contract Claims.

Defendant's motion should be denied because Ms. Causay's breach of contract claim arises from express provisions in the Deed in Lieu and is therefore not preempted by the FCRA. *See Spencer v. Nat'l City Mortg.*, 831 F. Supp. 2d 1353, 1363 (N.D. Ga. 2011). The FCRA states, in relevant part, "No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under §1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. §1681t(b)(1)(F).

Accordingly, for a cause of action to be preempted by the FCRA, it must: (1) be imposed by a requirement or prohibition under the laws of any State ("Duty Requirement"), and; (2) be made with respect to any subject matter regulated under §1681s-2 ("Subject Matter Requirement"). For example, Ms. Causay's defamation claim is preempted because it satisfies both requirements in that: (1) the duty not to report false information is imposed under state common law, and; (2) the duty is imposed with respect to the furnisher's responsibilities under §1682s-2 to, if it provides information to consumer reporting agencies, that the information be accurate.

Ms. Causay's claim for breach of an express contract provision is not preempted because it does not meet the conditions of the Duty Requirement. Defendant appears to claim that Ms. Causay's express breach of contract claim is preempted because it relates to credit furnishing,

thus satisfying the Subject Matter Requirement.[5] Yet this reasoning ignores the plain language of the statute. In fact, Defendant fails to address the Duty Requirement altogether. This is likely because any argument that the agreement between the parties resulted in a duty imposed by state law must fail.

   i. *The Duty Requirement*

Preemption does not apply to Ms. Causay's breach of contract claim because it arises from breach of an express agreement of the parties and that agreement does not bear upon whether the information submitted to the credit reporting agencies is accurate or not. The only prohibitions and requirements governed by §1681t(b)(1)(F) are those imposed by the States. However, a distinction exists between a *duty* imposed by state law and a *remedy* provided by state law. In a breach of contract claim, the remedy arises under state law but the duty is independently and affirmatively undertaken by the Parties themselves. *See Alley v. Farmers Bank, Inc.* 2014 U.S. Dist. LEXIS 120675 at *12 (M.D. Ga. Aug. 29, 2014).

The Supreme Court explained this distinction when it addressed an analogous federal statute. In a plurality decision, it found that "a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a "requirement . . . imposed under State law." *Cipollone v. Liggett Group*, 505 U.S. 504, 526 (1992) (under the Labeling Act); *see also Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 17 Fla. L. Weekly Fed. C 355 (11th Cir. 2004). Here, through the Deed in Lieu, the bank agreed not to take any further action to collect. Accordingly, Wells Fargo's reporting constitutes a breach of an express contract.

---

[5] Yet, this condition is arguably not satisfied because the §1681s-2 does not create a duty to furnish information, just that if a furnisher chooses to provide information to the credit reporting agencies, that it be accurate. Fed. Trade Comm'n, Report to Congress on the Fair Credit Reporting Act Dispute Process 4 (Aug. 2006), available at https://www.ftc.gov/reports/federal-trade-commission-board-governors-federal-reserve-system-report-congress-fair-credit ("The FCRA does not require furnishers to report to CRAs, but, as discussed below, if they do report, they must comply with certain provisions of the statute.")

Applying tort claim preemption approaches to Ms. Causay's breach of contract claim is a red herring. *See Spencer v. Nat'l City Mortg.*, 831 F. Supp. 2d 1353, 1363 (N.D. Ga. 2011). The Seventh Circuit has not addressed this novel argument. *See Aleshire v. Harris, N.A.*, 586 F. App'x 668, 670 (7th Cir. 2013) (unpubl.) ("Alseshire's third complaint did not include her original… state law breach of contract claim."); *see Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011); *Purcell v. Bank of Am.*, No. 1:09 CV 356, 2010 U.S. Dist. LEXIS 126704, at *23-24 (N.D. Ind. Nov. 30, 2010) ("Purcell has not listed any specific state legal theories in her complaint as she does not need to plead her theories of recovery at this point.").

The only courts in this district to address preemption of a breach of contract claim post-*Purcell* have found that preemption did not apply or determined the claim did not arise from an express agreement. *See Llames v. JP Morgan Chase & Co.*, No. 11 CV 5899, 2012 U.S. Dist. LEXIS 51682, at *12-13 (N.D. Ill. Mar. 23, 2012) (denying motion to dismiss breach of contract claim after analyzing *Purcell* as to defamation claim); *Zahran v. Bank of Am.*, No. 15 C 1968, 2016 U.S. Dist. LEXIS 26860, at *8 (N.D. Ill. Mar. 3, 2016) ("There are no statements in the Creditors Interchange letter that might be read as a promise to cease debt collection attempts other than the statement that credit bureaus will be notified that the account is in a 'settled in full' status.").

Defendant may argue that *Hukic v. Aurora Loan Services*, cited in *Spencer*, stands for a contrary rule but this assertion would be misplaced. Though a well-reasoned decision, *Spencer* inaccurately cites *Hukic* as deciding contrary to its holding. *See Spencer*, 831 F. Supp.2d at 1364, *citing Hukic*, 2007 U.S. Dist. LEXIS 64629 (N.D. Ill. 2007). In reality, *Hukic* did not address the Duty Requirement; rather, *Hukic* addresses the Subject Matter Requirement. *Hukic*, 2007 U.S. Dist. LEXIS 64629 (N.D. Ill. 2007).

The agreement in *Hukic* was a mortgage that did not identify any furnishing responsibilities and the court did not identify the relevant duty in its analysis. Accordingly, the *Hukic* decision failed to distinguish between whether it was the duty or remedy that arose under state law. However, the *Hukic* court found that state and common law claims, including a breach of contract claim, related to furnishing and thus met the Subject Matter Requirement.

Had the court more closely analyzed the agreement, it could have either (a) found no express provision relating to furnishing and thus found that any duty arose under common law or (b) found an express provision in which the bank undertook a duty regarding furnishing resulting in a finding that the duty did not arise under common law and thus is not preempted. As a pre-*Purcell* decision, the court omits any analysis related to the difference between express and implied agreements or whether it is a duty or remedy that arises under contract law.

Defendant cites *Alley* for the general proposition that claims for breach of contract are preempted. *Alley v. Farmers Bank, Inc.* 2014 U.S. Dist. LEXIS 120675, *12 (M.D, Ga. Aug. 29, 2014); No. 13-146 (M.D. Ga.) Minute Order, Sept. 11, 2014. However, Defendant's case actually expressly supports Ms. Causay's position. In *Alley*, the court *sua sponte* said:

> It is clear that a breach of contract claim based on an express agreement between the parties does not arise from a "requirement or prohibition. . . imposed under laws of any State" and therefore falls outside the preemption imposed by §1681t(b)(1)(F).

*Alley,* 2014 U.S. Dist. LEXIS 120675 at *12 (M.D. Ga. Aug. 29, 2014).

With the backdrop of the nationwide FCRA, furnishers may hold themselves to a duty not contained or actionable under the FCRA by entering into a specific agreement, such as the Deed in Lieu. This structure falls in line with the purpose of the FCRA which was, "in part, to avoid a patchwork system of conflicting regulations." *Ross v. FDIC*, 625 F.3d 808, 813 (4th Cir. 2010), citing Michael Epshteyn, Note, *The Fair and Accurate Credit Transactions Act of 2003:*

9

*Will Preemption of State Credit Reporting Laws Harm Consumers?*, 93 Geo. L.J. 1143, 1154 (2005).

If this Court determines that express breach of contract claims premised on credit reporting are preempted, no consideration would exist for agreements like the Deed in Lieu. Such a holding would have widespread consequences in the credit and collection industries. Express agreements between consumers and furnishers (specifically Wells Fargo) would be illusory.

Moreover, Defendant's interpretation of preemption would have a drastically chilling effect, nationally, for any consumer (or for that matter any bank) who wants to settle a debt, disputed or otherwise. It would affect agreements entered into by the credit industry, the collection industry, and millions of consumers. Indeed, Wells Fargo's fraudulent inducement of consumers to enter into such agreements would be grounds to invalidate all deeds in lieu containing such language. Moreover, it may give rise to a cause of action for fraudulent inducement against Wells Fargo by virtue of Wells Fargo deceptively failing to inform the consumer that despite this explicit language, the bank is still capable of coercing payment by reporting the account to the credit reporting agencies. This result is not only unfair to consumers but also likely undesirable to Defendant.

### B. This Court Should Not Strike Relevant Allegations That Support Ms. Causay's Breach of Contract Claim.

As an initial matter, Defendant does not claim that Ms. Causay's breach of contract claim is based solely on its reporting to credit reporting agencies. Thus, Defendant implicitly concedes that Ms. Causay's breach of contract claim is sufficient except to the extent it is based on allegations related to one aspect of Defendant's coercive conduct – trying to collect on the fully satisfied loan by use of publishing the debt to the credit reporting agencies. The Defendant

breached this agreement by its act of reporting whether the report was accurate or not. Thus, the FCRA is inapplicable since the Defendant's took an affirmative act to report which it had agreed not to take.

Defendant provides no argument or basis for its proposition that this should Court blue-pencil the Complaint to ferret out what Defendant would label "preempted" allegations. Defendant does not claim these credit reporting allegations are scandalous. Nor does it contend the allegations are immaterial, redundant, or impertinent. In fact, aside from the preemption argument addressed above, Defendant takes no other issue with the sufficiency of Ms. Causay's FCRA and breach of contract claims. Each and every action Wells Fargo took in collecting on the extinguished loan supports these claims. Accordingly, no basis exists for this Court to strike these relevant factual allegations.

In breach of the Parties' agreement, and as alleged in the Complaint, the bank persisted in taking measures to continue collecting on an extinguished loan. It used robust and aggressive collection attempts using a variety of coercive means to ensure compliance. This included sending Ms. Causay threatening letters, placing unwanted and annoying phone calls to her cell phone, and falsely reporting the loan status to the credit reporting agencies. *See Purnell v. Arrow Fin. Servs., LLC*, No. 07-1903, 2008 U.S. App. LEXIS 25488, *17 n.5 (6th Cir. Dec. 16, 2008) (unpubl.) (assuming reporting a debt to a credit reporting agency constitutes a "collection activity"), *citing* FTC Staff Opinion Letter, 1997 WL 33791232, *1 (F.T.C.) (Dec. 23, 1997) ("the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls."); *Smith v Encore Capital Group, Inc.*, 966 F Supp 2d 817, (E.D. Wis. 2013) (credit reporting constitutes collection of debt); *Edeh v. Midland Credit Mgmt.*, 748 F.Supp.2d 1030 (D. Minn. 2010); *Zamos v Asset Acceptance, LLC*, 423

F.Supp.2d 777 (N.D. Ohio 2006); *Sullivan v. Equifax, Inc.*, 2002 U.S. Dist. LEXIS 7884, at *4 (E.D. Pa. Apr. 19, 2002) ("reporting a debt to a credit reporting agency is a powerful tool designed, in part, to wrench compliance with payment terms").

Moreover, Defendant's suggested cherry-picking exercise is not supported by the case law it cites. Defendant conflates its motions to dismiss and to strike. None of the cases Defendant cites in support of its motion to strike under Federal Rule of Civil Procedure 12(f) were actually decided on a motion to strike. *See Alley*, 2014 U.S. Dist. LEXIS 120675, *12 (M.D, Ga. Aug. 29, 2014); No. 13-146 (M.D. Ga.) Minute Order, Sept. 11, 2014 (ruling on motion to dismiss); *Willey v. J.P. Morgan Chase, N.A.*, 2009 U.S. Dist. LEXIS 57826 (S.D.N.Y July 7, 2009) (ruling on motion to dismiss); *Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 U.S. Dist. LEXIS 105568, at *1 (E.D. Mich. Dec. 17, 2008) (ruling on motion to dismiss); *Roybal v. Equifax, et al.*, No. 2:05-cv-01207-MCE-KJM, 2008 WL 4532465 (E.D. Cal. Oct. 8, 2008) (ruling on summary judgment after benefit of discovery).

Defendant overreaches to request that specific allegations be stricken in a claim that it does not even argue is entirely preempted. It relies on *Burns* in support of its motion to strike allegations related to the breach of contract claim. *Burns v. Am. United Life Ins. Co.*, No. 05-0466, 2005 WL 3164233, at *8 (S.D. Ill. Nov. 28, 2005). Yet this case is distinguishable because it addresses whether to strike entire claims or reference to inapplicable law, not isolated factual allegations.

In *Burns*, the court was presented with the question of whether state law requests for relief should be stricken once that claim for relief is determined to be preempted by ERISA. Id.,

at*1, 3-4.[6] The court did not engage in the exercise Defendant requests, but rather struck the requests for the relief and reference to the preempted and inapplicable state law. Id., *24. As a result, the court never addressed the issue presented to this Court - whether factual allegations should be stricken merely by virtue that they relate to a federal claim.

In the present case, Ms. Causay's credit reporting allegations properly support her breach of contract and FCRA claims. They provide this Court with valuable background information relating to the extent of Wells Fargo's actions in breaching its contract with Ms. Causay. Accordingly, this Court need not perform a line-item review of Ms. Causay's allegations to cherry pick and eliminate factual background. Thus, Defendant's motion to strike should be denied.

## CONCLUSION

The FCRA does not preempt claims arising from express agreements between the Parties. Ms. Causay's breach of contract claim is premised on Defendant's breach of an express duty, voluntarily undertaken by Wells Fargo in exchange for Ms. Causay's promises, not imposed by State law. Further, Defendant does not claim that Ms. Causay's breach of contract claim or FCRA claims are entirely preempted, and it provides no legal support for striking the factual allegations. This Court should not accept Defendant's invitation to comb through the Complaint for what amount to relevant allegations. As such, the motion to strike should be denied.

Dated: November 1, 2016					Respectfully submitted,

						By: /s/ Lance A. Raphael

One of Plaintiff's Attorneys

---

[6] Accordingly, the only argument considered by the court in opposition to the motion to strike was against preemption, not striking factual allegations. Id., at *1.

Lance A. Raphael
Katherine M. Bowen
Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
(312) 782-5808