# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TAWANDA R. CAUSAY, | |
| Plaintiff, | |
| | Case No. 16-cv-7398 |
| v. | |
| WELLS FARGO BANK, N.A. and EQUIFAX INFORMATION SERVICES, LLC, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tawanda R. Causay ("Plaintiff") alleges that Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by failing to correct false information it furnished to credit reporting agencies. Compl. [1]. Plaintiff also raises state law claims of defamation and breach of contract. *Id.*

On September 19, 2016, Defendant filed a motion to dismiss Plaintiff's defamation claim (Count I) pursuant Federal Rule of Civil Procedure 12(b)(6), as well as a motion to strike a portion of Plaintiff's breach of contract claim (Count IV) pursuant to Rule 12(f), on the grounds that Plaintiff's state law claims are preempted by the FCRA. Def.'s Mot. Dismiss & Strike [20]. For the reasons explained below, Defendant's motion is granted as to Count I and denied as to Count IV.

## I. Background

### A. The Deed in Lieu of Foreclosure

Plaintiff's Complaint sets forth the following relevant facts, which the Court accepts as true for the purposes of Defendant's motions. On April 12, 2007, Plaintiff executed a mortgage for her Chicago condominium. Compl. [1] ¶ 20. On September 10, 2010, the mortgage was assigned to Defendant. *Id.* ¶¶ 10, 21. On November 16, 2012, Plaintiff and Defendant entered into an agreement entitled "Deed in Lieu of Foreclosure" ("Deed in Lieu"), which, according to Plaintiff, consisted "of a set of promises." *Id.* ¶¶ 22-23, Ex. 1. Specifically, in exchange for conveying her interest in the property to Defendant, Defendant agreed to pay Plaintiff $121,181.40 and "forever forebear taking any action whatsoever to collect" against Plaintiff on the obligations "secured by the mortgage/deed of trust." *Id.* ¶¶ 24, 26 (quoting Compl. [1] Ex. 1) (emphasis removed). As additional consideration, Wells Fargo waived "its right to bring an action" against Plaintiff "based on the promissory note secured by the mortgage" and agreed "not to name" Plaintiff "as a party to a foreclosure action." *Id.* ¶ 25, Ex. 1.

### B. Wells Fargo's Collection Attempts and Credit Furnishing

Plaintiff contends that Wells Fargo repeatedly breached the Deed in Lieu by attempting to collect on the "nonexistent mortgage" after she conveyed her interest in the property to the Bank. *Id.* ¶¶ 84-85. Plaintiff alleges that, over a three-year period, Wells Fargo attempted to collect on the loan by sending form collection letters and placing telephone calls to Plaintiff. *Id.* ¶¶ 30-33, 38.

On multiple occasions during this time period, Plaintiff informed Defendant that the Deed in Lieu had been executed. *Id.* ¶ 34. For example, on November 23, 2014, Plaintiff informed Defendant that she no longer owned the property and requested that Defendant cease all communication. *Id.* ¶ 45. On December 5, 2014, Defendant sent Plaintiff a letter confirming her request. *Id.* ¶ 46, Ex. 2. Defendant's confirmation, however, also stated that Defendant was "in the process of moving forward with the foreclosure referral and process." *Id.* ¶¶ 46-47, Ex. 2. Moreover, despite Plaintiff's request, Defendant continued to send collection letters and make collection calls. *Id.* ¶¶ 32-33, 56.

In addition to contacting Plaintiff, Defendant also falsely reported to credit reporting agencies that Plaintiff's mortgage account was in default. *Id.* ¶¶ 29, 48. In April 2014, Plaintiff disputed the inaccuracy with Equifax Information Services, LLC ("Equifax")—the other named defendant in this suit—and indicated that she was no longer liable for the mortgage account. *Id.* ¶ 35. Although Equifax informed Defendant of the dispute, Defendant continued to report to credit reporting agencies that the loan on Plaintiff's property was in default. *Id.* ¶¶ 36, 39. On February 3, 2015, Plaintiff's credit report still listed the non-existent Wells Fargo mortgage as delinquent. *Id.* ¶ 49.

## C. The Present Litigation

On July 20, 2016, Plaintiff filed a five-count class action complaint in this Court. Compl. [1]. Plaintiff brings state law claims for defamation (Count I) and

breach of contract (Count IV),[1] and asserts violations of two federal statutes, the FCRA (Counts II and III) and Telephone Consumer Protection Act, 47 U.S.C. § 227 (Count V). *Id.* Defendant's motions relate only to Plaintiff's state law claims.

In Count I, Plaintiff alleges that, on multiple occasions, Defendant "published misrepresentations" about the status of her mortgage account to various credit reporting agencies, including TransUnion, Equifax, and Experian, and "through these entities to all of Plaintiff's potential lenders." *Id.* ¶ 63. Plaintiff contends that these misrepresentations constituted "defamations" made "with legal malice and a willful intent to injure Plaintiff by placing derogatory credit information on her credit reports as punishment for what Defendant believed was a failure to pay." *Id.* ¶ 64. In Count IV, Plaintiff alleges that Defendant breached the Deed in Lieu by continuing collection attempts against Plaintiff and incorrectly reporting to credit reporting agencies that her account was delinquent. *Id.* ¶¶ 84-86.

Defendant argues that Plaintiff's state law claims are preempted by the FCRA to the extent they are based upon Defendant's credit furnishing activities. Def.'s Mem. Supp. Mot. Dismiss & Strike [21] 1. Accordingly, Defendant asserts that this Court should dismiss Plaintiff's defamation claim and strike the portion of Plaintiff's breach of contract claim that is based on Wells Fargo's alleged improper reporting. *Id.*

---

[1] Plaintiff's Complaint [1] refers to this claim as "Count VI" despite its placement between Counts III and V. The Court interprets this as a mere scrivener's error.

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining whether a complaint states a plausible claim for relief, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff.  *Id.* at 679.

Pursuant to Rule 12(f), the Court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). Motions to strike "are generally disfavored because they potentially only delay the proceedings." *Edwards v. Mack Trucks, Inc.,* 310 F.R.D. 382, 386 (N.D. Ill. 2015). The moving party has the burden of showing that the challenged allegations "are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.,* 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003) (internal quotations omitted).  A motion to strike is proper, however, "when it serves to remove 'unnecessary clutter' to expedite a case." *Id.* (quoting *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989)).

A motion to strike should be granted only if the language in the pleading: (1) "bears no possible relation to the controversy"; or (2) "may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The former "is essentially a relevancy inquiry." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013). Regarding the latter, prejudice results "when the matter complained of has the effect of confusing the issues, or where it is so lengthy and complex that it places an undue burden on the responding party." *Sun Life Assurance Co. of Canada v. Great Lakes Business Credit LLC*, 968 F. Supp. 2d 898, 903 (N.D. Ill. 2013).

## III. Analysis

### A. Plaintiff's Defamation Claim (Count I)

Originally enacted in 1970, the FCRA is a "comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. FDIC*, 625 F.3d 808, 812 (4th Cir. 2010). The FCRA provides protection for consumers "by ensuring accuracy and fairness in credit reporting and requiring that such reporting is confidential, accurate, relevant, and proper." Tracy Bateman Farrell, *Preemption of State Law by Fair Credit Reporting Act,* 8 A.L.R. Fed. 2d 233, § 2 (2006).

As originally enacted, the FCRA contained the following preemption provision:

> Except as provided in sections 1681n and 1681o of this title, *no consumer may bring any action or proceeding in the nature of defamation*, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a

> consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added). Thus, § 1681h(e) preempts "some" state regulation of reports to credit agencies, *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011), but does not preempt *willfully* false reports, as Plaintiff alleges here. *See* Compl. [1] ¶ 71 ("The conduct, actions and inactions of Wells Fargo were willful, malicious, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff.").

In 1996, however, Congress amended the FCRA to impose new duties upon those furnishing information to credit reporting agencies. *See* 15 U.S.C. § 1681s-2; *see also Ryan v. Trans Union Corp.,* No. 99-cv-216, 2000 WL 1100440, at *1 (N.D. Ill. Aug. 4, 2000). Specifically, under § 1681s-2(b), a furnisher who receives notice that a consumer disputes the "completeness or accuracy" of information provided to a credit reporting agency must conduct an investigation. *Id.* § 1681s-2(b)(1)(A). If the investigation finds that the disputed information is inaccurate, the furnisher must report its results to credit reporting agencies and either modify, delete, or permanently block the reporting of that information. *Id.* § 1681s-2(b)(1)(D)-(E). Plaintiff's FCRA claim against Wells Fargo (Count II) alleges violations of these duties. *See* Compl. [1] ¶ 73.

The 1996 amendments to the FCRA also added another, broader preemption provision—§ 1681t(b)(1)(F)—to supplement § 1681h(e). That section provides that, aside from certain situations not applicable here, no "requirement or prohibition may be imposed under the laws of any State" with respect to "any subject matter regulated under 15 U.S.C. § 1681s-2" relating to "the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Unlike § 1681h(e), § 1681t(b)(1)(F) does not contain an exception for willfully false reports.

In the years following the 1996 amendments, some courts, in attempt to harmonize § 1681h(e) and § 1681t(b)(1)(F), found the latter to apply only to state *statutes*, but not state *common law*. *See, e.g., Purcell v. Bank of Am.*, No. 09-cv-356, 2010 WL 4955542, at *5-*9 (N.D. Ind. Nov. 30, 2010); *Manno v. American General Finance Co.,* 439 F. Supp. 2d 418, 425 (E.D. Pa. 2006); *Johnson v. Citimortgage, Inc.,* 351 F. Supp. 2d 1368, 1376 (N.D. Ga. 2004); *Carlson v. Trans Union, LLC,* 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003). In 2011, however, the Seventh Circuit explicitly rejected this approach. *Purcell v. Bank of America*, 659 F.3d 622 (7th Cir. 2011). In doing so, it held that § 1681t(b)(1)(F) reduces the scope of permissible state regulation to preempt even willfully false reports that fall under its purview. *Id*. at 625 ("[T]he first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more.").

Section 1681t(b)(1)(F), as interpreted in *Purcell*, controls here. Count I alleges that Defendant defamed Plaintiff by providing inaccurate information to

credit reporting agencies.  Such allegations fall within the scope of § 1681s-2, and thus, § 1681t(b)(1)(F).  *See Aleshire v. Harris, N.A.,* 586 F. App'x 668, 671 (7th Cir. 2013) ("Because [the plaintiff's] state law tort claims arise out of [the defendant's] reports to consumer credit reporting agencies, they relate to a matter regulated under section 1681s-2.").  Therefore, Plaintiff's defamation claim is preempted. Accordingly, Count I is dismissed with prejudice.

### B.    Plaintiff's Breach of Contract Claim (Count IV)

#### i.    Preemption of Express Breach of Contract Claims Under the FCRA

Defendant next argues that the portions of Count IV premised upon credit furnishing allegations are also preempted under § 1681t(b)(1)(F) and should be stricken.  Def.'s Mot. Dismiss & Strike [20] ¶ 2.  Specifically, Defendant moves to strike Plaintiff's allegation that Defendant "continued to report to the credit reporting agencies that an account was delinquent and failed to note that it was in dispute or resolved through a deed in lieu."  Compl. [1] ¶ 86.

Although *Purcell* concluded that § 1681t(b)(1)(F) potentially reaches both state statutory and common law, it did not find its preemptive scope to be without limit.  *See* 659 F.3d at 625 ("[T]here are exceptions to § 1681t(b)(1)(F)."); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 523 (1992) ("That the pre-emptive scope of [a federal statute] cannot be limited to positive enactments does not mean that [it] pre-empts all common-law claims. . . . [W]e must look to each of petitioner's common-law claims to determine whether it is in fact pre-empted.").  Indeed,

neither the Seventh Circuit nor courts in this district have squarely addressed preemption of breach of contract claims under the FCRA.

Returning to the statute itself, § 1681t(b)(1)(F) provides, in relevant part, that no "requirement or prohibition may be imposed under the laws of any State" with respect to "any subject matter regulated under 15 U.S.C. § 1681s-2" relating to "the responsibilities of persons who furnish information to consumer reporting agencies." For preemption to apply, therefore, two requirements must be met: (1) the "requirement or prohibition"—*i.e.*, the legal duty giving rise to the claim—must be "imposed under the laws of any State" ("duty requirement"), and; (2) the state law claim must be related to "subject matter regulated under § 1681s-2" ("subject matter requirement").

Defendant contends that Plaintiff's breach of contract claim is preempted to the extent it is premised upon improper credit furnishing. Def.'s Mem. Supp. Mot. Dismiss & Strike [21] 10. By doing so, Defendant ostensibly argues that because the "subject matter" of such allegations relates to § 1681s-2, then preemption must apply. Defendant fails, however, to address § 1681t(b)(1)(F)'s duty requirement. Moreover, a distinction must be drawn between a *duty imposed* by state law and a *remedy provided* by state law. While state law may provide the *remedy* for breach of an express contract, the predicate *duty* is independently undertaken by the parties themselves. Thus, on its face, § 1681t(b)(1)(F) does not apply.

Here, *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 515 (1992), is instructive. In *Cipollone*, the Supreme Court addressed a nearly identical preemption provision

found in the Public Health Cigarette Smoking Act of 1969 ("the Act"), 15 U.S.C. §

1331, *et seq.* That provision provides, in relevant part, that no "requirement or

prohibition based on smoking and health shall be imposed under State law with

respect to the advertising or promotion of any cigarettes the packages of which are

[lawfully] labeled." *Id.* at 515. Following the death of his mother from lung cancer,

petitioner sued cigarette manufacturers for, among other things, breach of an

express warranty, alleging that respondents had "expressly warranted that

smoking cigarettes which they manufactured and sold did not present any

significant health consequences." *Id.* at 509.

In a plurality decision, the Supreme Court held that the Act did not preempt

the petitioner's breach of express warranty claim. *Id.* at 525. The Court's "central

inquiry" asked whether the claim "would require the imposition under state law of a

requirement or prohibition based on smoking and health with respect to advertising

or promotion." *Id.* at 525. The Court held that it would not. According to the

Court:

> A manufacturer's liability for breach of an express
> warranty *derives from*, and is measured by, the terms of
> that warranty. Accordingly, the "requirement[s]" imposed
> by an express warranty claim are not "imposed under
> State law," but rather imposed *by the warrantor*. If, for
> example, a manufacturer expressly promised to pay a
> smoker's medical bills if she contracted emphysema, the
> duty to honor that promise could not fairly be said to be
> "imposed under state law," but rather is best understood
> as undertaken by the manufacturer itself. While the
> *general* duty not to breach warranties arises under state
> law, the particular "requirement . . . based on smoking
> and health . . . with respect to the advertising or
> promotion [of] cigarettes" in an express warranty claim

> arises from the manufacturer's statements in its advertisements. In short, a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a "requirement . . . *imposed under State law* " within the meaning of § 5(b).

*Id*. 525-26 (quoting the Act) (some emphasis added). In a footnote, the Court further noted that such "express warranty claims are said to sound in contract rather than in tort." *Id*. n.23 (citing Black's Law Dictionary 1489 (6th ed. 1990) (defining "tort": "There must always be a violation of some duty . . . and generally such duty must arise by operation of law and not by mere agreement of the parties"; defining "contract": "An agreement between two . . . persons which creates an obligation.").

Like the Act in *Cipollone*, § 1681t(b)(1)(F), by its own express terms, preempts only "requirement[s] or prohibition[s]" that are "imposed under the laws of any State." Moreover, the Deed in Lieu, like the warranty in *Cipollone*, while *enforceable* under state law, was not "imposed" by the State. Rather, it was "imposed" by the parties themselves when they entered into the agreement. Because the legal duty giving rise to Plaintiff's breach of express contract claim is not imposed by state law, the claim is not preempted by § 1681t(b)(1)(F). *See Granville Alley v. Farmers Bank, Inc.,* No. 3:13-CV-146, 2014 WL 4287103, at *7 (M.D. Ga. Aug. 29, 2014) (finding preemption for breach of an implied agreement but specifically noting that "it is clear that a breach of contract claim based on an express agreement between the parties does not arise from a 'requirement or prohibition . . . imposed under laws of any State' and therefore falls outside

preemption imposed by § 1681t(b)(1)(F)"); *Spencer v. National City Mortg.,* 831 F. Supp. 2d 1353, 1364 (N.D. Ga. 2011) (holding that to the extent the plaintiff's breach of contract claim was based upon breach of an express agreement, claim was not preempted by the FCRA); *Leet v. Cellco P'ship*, 480 F. Supp. 2d 422, 431-32 (D. Mass. 2007) (holding that breach of an alleged contractual obligation to remove negative information from plaintiff's credit report was not imposed by state law and therefore not preempted by the FCRA); *Kavicky v. Washington Mut. Bank, F.A.*, No. 3:06CV01812(AWT), 2007 WL 1341345, at * 2 (D. Conn. May 5, 2007) ("[T]he FCRA does not preempt breach of contract claims."). Consequently, Defendant's motion to strike Count IV is denied.

### ii. The Deed in Lieu Constitutes an Express Agreement

One final wrinkle remains. Some district courts have concluded that, express contracts notwithstanding, the FCRA preempts breach of *implied* contract claims. *See, e.g. Granville Alley v. Farmers Bank, Inc.*, No. 3:13-CV-146 CAR, 2014 WL 4287103, at *8 (M.D. Ga. Aug. 29, 2014) ("Plaintiffs' breach of contract claim is indisputably based on the Bank's alleged breach of *implied* terms of the Note and Mortgage . . . . [T]he Court is inclined to find such claim preempted by the FCRA.") (emphasis in original); *Carruthers v. Am. Honda Fin. Corp.*, 717 F. Supp. 2d 1251, 1254 (N.D. Fla. 2010) (finding preemption where plaintiff did not allege that defendant violated a specific term of contract, but rather the "covenant of good faith and fair dealing implied in every contract under Florida law") (internal quotations omitted).

Nevertheless, this Court need not decide whether § 1681t(b)(1)(F) applies to implied breach of contract claims, because the Deed in Lieu at issue here constitutes an express agreement. An express agreement is "manifested by direct and appropriate language, as distinguished from that which is inferred from conduct." *Beaver v. Grand Prix Karting Ass'n, Inc.,* 246 F.3d 905, 909 (7th Cir. 2001) (quoting Black's Law Dictionary (6th ed. 1990)); *Wynn v. Bd. of Educ. of Sch. Dist. No. 159,* 815 F. Supp. 2d 1007, 1017 (N.D. Ill. 2011) (stating that under Illinois law, "the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either written or oral, while in the latter their agreement is arrived at by a consideration of their acts and conduct.").

Here, Defendant explicitly agreed to "forever forebear taking any action whatsoever to collect" against Plaintiff on the obligations "secured by the mortgage/deed of trust." Compl. [1] Ex. 1. Plaintiff alleges that, despite this agreement, Defendant "continued to report to the credit reporting agencies that an account was delinquent." *Id.* ¶ 86. The reporting of debt to a credit reporting agency constitutes a "collection activity." *See Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 304 (6th Cir. 2008) ("We assume without deciding that the reporting of the debt to Equifax constitutes a 'collection activity.'"); *Smith v. Encore Capital Grp. Inc.*, 966 F. Supp. 2d 817, 829 (E.D. Wis. 2013) ("[C]redit reporting constitutes collection of a debt."); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1035 (D. Minn. 2010), *aff'd,* 413 F. App'x 925 (8th Cir. 2011) ("[T]hreatening to

report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver."); *Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2010); *Sullivan v. Equifax, Inc.*, No. CIV.A. 01-4336, 2002 WL 799856, at *4 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is a powerful tool designed, in part, to wrench compliance with payment terms.") (internal quotations omitted); Federal Trade Commission, Office of the Secretary, *Fair Debt Collection Practices Act, Staff Opinion Letter*, 1997 WL 33791232, at *1 (December 23, 1997) (opining that it is not permissible under the Fair Debt Collection Practices Act for a debt collector to report, or continue to report, a consumer's charged-off debt to a consumer reporting agency after the debt collector has received, but not responded to, a consumer's written dispute during the 30–day validation period under 15 U.S.C. § 1692g) ("[T]he reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls.").

In sum, § 1681t(b)(1)(F) does not apply to Count IV and Defendant's motion to strike Count IV is denied.

## IV.    Conclusion

For the reasons explained above, Defendant's Motion to Dismiss and Strike [20] is granted as to Count I and denied as to Count IV.

Date: December 12, 2016                    Entered:

_John Robert Blakey_
United States District Judge